IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ELBRYAN TREMAINE DAVIS,  )<br>    Plaintiff,   )<br>   )<br>v.   )<br>   )<br>D.C. LANCASTER, *et al.*,   )<br>    Defendants.   ) | Civil Action No. 7:22-cv-00410<br><br>By: Elizabeth K. Dillon<br>   United States District Judge |

**MEMORANDUM OPINION**

Elbryan Tremaine Davis, proceeding *pro se*, is a federal prisoner currently housed at FCI Beckley.  He has filed a civil rights complaint, which the Clerk has docketed as against six defendants:  D.C. Lancaster, Bureau of ATF, Marshal of the United States, City of Danville Police Department (DPD), Michael J. Newman, and "City of Danville, Office of the Commonwealth Attorney."[1]  By order entered August 26, 2022, the court dismissed the case without prejudice after Davis failed to return his consent-to-fee form by the deadline set by an earlier order.  (Dkt. No. 6.)

Thereafter, the Clerk received a notification that the court's dismissal order was returned as undeliverable and received from Davis two notices of change of address and a signed consent-to-fee form.  (Dkt. Nos. 7–10.)  On October 7, 2022, Davis filed a motion for reconsideration of the dismissal order, which is pending before the court and addressed herein.  For the reasons discussed below, the court will grant the motion to reconsider.  Upon review of the complaint, though, the court will dismiss the claims against all defendants except defendant Lancaster.

---

[1] The complaint lists each of these entities in quotation marks, but the complaint does not allege any specific conduct other than by the two individual defendants (D.C. Lancaster and Michael J. Newman).  It is unclear whether Davis intended to name those entities as defendants or was merely listing them as entities with which Lancaster and Newman are associated.

## I. MOTION TO RECONSIDER

In his motion to reconsider, Davis states that he mailed the consent-to-fee form the day after he received it, when he was housed at a local regional jail, and he asserts that the jail's mail logs will confirm that. He also has provided a copy of that form, dated August 11, 2022. Crediting his statements, Davis timely gave the consent-to-fee form to prison officials for mailing, but for whatever reason, it was never received by the court. The court has now received it, however, and Davis acted promptly in seeking reconsideration upon learning of the dismissal. Thus, the court will grant the motion to reconsider, and direct the Clerk to return this case to the active docket of the court.

## II. REVIEW OF DAVIS'S COMPLAINT

### A. Legal Standard

Davis's complaint is now before the court for review pursuant to 28 U.S.C. § 1915A(a). Under that statute, the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The court must "dismiss the complaint, or any portion of the complaint," if it is frivolous, fails to state a claim on which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)–(2).

Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Applying these standards to Davis's complaint, the court concludes that all the defendants, except for defendant Lancaster, must be dismissed. The court will therefore dismiss all the other defendants and separately direct the Clerk to serve the complaint only on defendant Lancaster.

**B. Background**

Davis is currently serving a federal sentence imposed by another judge of this court after he was convicted of distributing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). According to the Presentence Investigation Report in his criminal case, he was arrested on December 11, 2020, on related state charges, which were nolle prossed on March 30, 2021, after he was indicted on federal charges. He was taken into federal custody on March 31, 2021. (*United States v. Davis*, No. 4:21-cr-00008, PSR at 1, Dkt. No. 66.) The PSR indicates that, on the same date that the charges stemming from Davis's December 2020 arrest were nolle prossed, three additional state charges were also nolle prossed. (*Id.* ¶¶ 52, 53.) Those three charges arose from a separate arrest on October 5, 2020.

In his complaint, Davis refers to the events of October 5, 2020, alleging that he was "falsely accused and charged with" manufacturing/distribution of a schedule I/II second offense, possession of a firearm with drugs, and possession of a firearm by a felon. (Compl. 2, Dkt. No. 1.) He claims that the charges against him were fabricated, and it appears that he is accusing defendant Lancaster, in particular, of fabricating the charges. Specifically, he says that a report prepared by Lancaster stated that he had sold 3.5 grams of crack cocaine to a confidential informant in a controlled buy, but he did not do that, and no cocaine was found near him.

He also explains that the gun he was charged with possessing was in a bag, in a box, in the trunk of the car he was driving. He did not own the car or the gun, nor had he ever touched

the gun, as later confirmed by fingerprinting and DNA testing. Despite this, Lancaster's report falsely stated that Davis had a gun on his person and was using it in a threatening manner. He also states that Lancaster wrote up the complaint (presumably the criminal complaint) and executed the warrants against him. It is unclear, but Davis seems to be alleging that the report was either part of the criminal complaint or used to support it.

Davis claims that the false report and the charges were brought as retaliation for not cooperating with Lancaster previously. Specifically, Davis earlier had refused to unlock his phone for Lancaster and had refused to answer Lancaster's questions about the identity of his alleged drug supplier. Davis further alleges that Lancaster questioned him for seven hours without providing water or a bathroom break.

Confusingly, Davis describes Lancaster as an "an employee of the Bureau of Alcohol, Tobacco, Firearms and Explosives, Marshal of the United States in Partnership with the City of Danville's Police Department." (Compl. 4.) Based on the entirety of the allegations, however, it appears to the court that Lancaster is employed as a police officer for the City of Danville. It is possible, although the complaint does not expressly allege it, that Lancaster was working on a joint task force with federal agencies at the relevant time.

Davis's complaint also faults Michael J. Newman, an assistant Commonwealth's Attorney, for pursuing and prosecuting the charges against him for six months even though the "facts of the case didn't match the complaint or the warrants." (*Id.*) He also asserts that Newman asked the court to deny Davis bond and later sought, as a bond condition, that Davis be required to stay out of Danville, where he was living and had close ties.

Although Davis titles each paragraph of his complaint as a "Claim," the only legal claims he specifically identifies are "false imprisonment, retaliatory prosecution, and malicious

4

prosecution." (*Id.* at 3.) Davis seeks $2.5 million in damages.

## C. Section 1983 Claim Asserting Malicious Prosecution

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

It appears that Davis's primary claim is a claim of malicious prosecution under § 1983, and he also may be asserting state-law claims of malicious prosecution, false imprisonment, and retaliatory prosecution.[2] As the Fourth Circuit has explained, [a] "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams*, 223 F.3d

---

[2] It is unclear whether his false imprisonment and retaliatory prosecution claims are brought under Virginia law or are simply sub-parts of his malicious prosecution claim. It is also unclear whether Davis intended to assert a separate, state-law claim of malicious prosecution, which has the same elements as a federal claim, but also requires malice. *Cadmus v. Williamson*, No. 5:15-CV-00045, 2016 WL 929279, at * 10 (W.D. Va. Feb. 1, 2016). Because the court concludes that Davis has plausibly stated at least one claim against Lancaster, the court will have the complaint served on him. If Lancaster files a motion to dismiss or motion for summary judgment, he shall also address these other claims, and in response, Davis can clarify whether he intended them to be separate claims. *Cf. Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019) (describing false imprisonment, malicious prosecution, and "retaliatory arrest" claims); *Daniczek v. Spencer*, 156 F. Supp. 3d 739 (E.D. Va. 2016) (describing claims of malicious prosecution and abuse of process under Virginia law).

257, 261 (4th Cir. 2000). To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Durham v. Hormer*, 690 F.3d 183, 188 (4th Cir. 2012)).

1. *Non-Individual Defendants*

To the extent Davis is naming various entities as defendants (as opposed to the two individuals), he has not stated a claim as to any of them under § 1983. As a reminder, Davis lists as defendants the "Bureau of ATF," the "Marshal of the United States," the "City of Danville Police Department" (DPD), and "Danville's Office of the Commonwealth Attorney."

a. *Federal Agencies*

As to the "Bureau of ATF" and the "Marshal of the United States," federal agencies do not act under color of state law and are not proper defendants to a § 1983 action. *Asmer v. Blocker*, No. CV 4:21-2817-RMG-TER, 2022 WL 2068864, at *2 (D.S.C. Mar. 25, 2022), *report and recommendation adopted,* No. 4:21-2817-RMG, 2022 WL 1708398 (D.S.C. May 27, 2022) ("[F]ederal officials cannot be sued under § 1983, because they do not act under color of state law. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 & n.30 (1982).")

Even if Davis were attempting to bring a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and its progeny, such claims must be brought against individuals, not against agencies. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (explaining that *Bivens*-type claims are "brought against the individual officer for his or her own acts, not the acts of others"). A *Bivens* claim is "not designed to hold officers responsible for acts of their subordinates," nor is it a "proper vehicle for altering an entity's policy." *Id.* (citations omitted); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 485–86 (1994)

(holding that while a federal agent is a proper defendant to a *Bivens* action, a federal agency is not).[3]

To the extent Davis is attempting to assert a state-law tort claim against either federal agency, it would have to be based on the conduct of a federal employee, and it does not appear that Lancaster is a federal employee.[4] Even if he were, the proper procedural vehicle for such a claim is the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(g), 2671–2680, and an FTCA claim must name the United States as a defendant. 28 U.S.C. § 2679(a). The two federal agencies identified by Davis cannot be sued for state-law torts under the FTCA. For the foregoing reasons, the two federal agencies must be dismissed.

    b. *City of Danville Police Department*

As to the DPD, a police department is not an entity subject to suit, and so cannot be sued. *Gladden v. Charlottesville VA Police Dept*, No. 7:16-CV-00519, 2017 WL 2537369, at *2 (W.D. Va. June 9, 2017); *Thompson v. City of Danville*, No. 4:10-cv-00012, 2011 WL 2174536 (W.D. Va. June 3, 2011) ("Local police and sheriff's departments in Virginia are "non suis juris," meaning they simply do not have the capacity to be sued."). The claims against this entity fail.

    c. *Commonwealth's Attorney*

As to the entity that the court believes is intended to be the Commonwealth's Attorney for the City of Danville, the Commonwealth's Attorney is a constitutional officer in Virginia. *See* Va. Const. art. VII, § 4. As such, numerous courts have held that commonwealth's attorneys

---

[3] As noted, Davis's complaint names the federal agencies but does not contain sufficient information for the court to determine the relationship between Lancaster and the agencies. *See supra* at 4. Notably, though, a number of courts have held that where a local law enforcement official has been deputized as a federal officer or is otherwise performing a federal function, he is not a state actor for purposes of § 1983. *Deavers v. Martin*, No. 2:21-CV-00423, 2022 WL 4348474, at *5 (S.D.W. Va. Sept. 19, 2022) (collecting authority). So, Lancaster's role when engaged in the allegedly wrongful conduct may determine whether he can be sued under § 1983 or must instead be named as a defendant to a *Bivens*-type claim.

[4] *See supra* note 3.

7

are entitled to Eleventh Amendment immunity from official-capacity claims.  *See, e.g.*, *Weiner v. Albemarle Cnty., Virginia*, No. 3:17-CV-00046, 2018 WL 542979, at *3 & n.1 (W.D. Va. Jan. 24, 2018) (so holding and collecting authority), *aff'd sub nom. Weiner v. Tracci*, 735 F. App'x 102 (4th Cir. 2018).  Thus, any official-capacity claims against the Commonwealth's Attorney of Danville fail.[5]

    d. City of Danville

To the extent that Davis's complaint can be construed as naming the City of Danville as a defendant, such local entities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief" only in certain circumstances, including "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 426 U.S. 658, 690 (1978).  An entity is liable under *Monell*, however, only where the entity's official policy or custom played a part in the alleged violation of federal law, *Oklahoma City v. Tuttle*, 471 U.S. 808, 817–18 (1985), such that the entity itself is a "moving force" behind the deprivation, *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981).  Davis does not allege that any official policy or custom of the City was responsible for the conduct of which he complains.  Thus, any § 1983 claims against the City of Danville fail.

Any state-law claims against the City are barred by the doctrine of sovereign immunity.  The doctrine of sovereign immunity bars state tort claims against the Commonwealth of Virginia unless it consents.  *Va. Elec. & Power Co. v. Hampton Redev. & Housing Auth.*, 225 S.E.2d 364, 367 (Va. 1976).  The doctrine extends to municipalities where the claims raise from "governmental" as opposed to "proprietary" functions.  *Niese v. City of Alexandria*, 564 S.E.2d

---

[5] The complaint contains no facts to support any individual-capacity claim against Danville's Commonwealth's Attorney.

127, 132 (Va. 2002). As another federal district court within Virginia has explained:

> Virginia adheres to the principle that a city's sovereign immunity for torts allegedly committed by police officers during the course of their employment is broad enough to render such city immune from liability for all forms of torts, including intentional torts. *Niese [v. City of Alexandria,* 564 S.E.2d 127, 133 (Va. 2002)]; *Harrison v. Prince William Cnty. Police Dept.,* 640 F. Supp. 2d 688, 712 (E.D. Va. 2009). Accordingly, here, the City . . . is immune from liability as to [the counts that allege] a Virginia tort.

*Hales v. City of Newport News*, No. 4:11CV28, 2011 WL 4621182, at *4 (E.D. Va. Sept. 30, 2011); *Shafer v. Virginia*, No. 6:20-CV-00044, 2021 WL 1156859, at *3 (W.D. Va. Mar. 26, 2021) ("[A] municipality is immune from liability for the actions of a police officer undertaken during the performance of his law enforcement duties . . . ." (quoting *Booker v. City of Lynchburg*, No. 6:20-cv-11, 2020 WL 4209057, at *10 (W.D. Va. July 22, 2020))). Thus, any state-law claims against the City also must be dismissed on the basis of sovereign immunity.

    2.  *Defendant Newman*

Turning next to individual-capacity claims against defendant Newman, the prosecutor involved in Davis's state criminal case, the court considers whether he is entitled to absolute prosecutorial immunity. Absolute immunity protects "the vigorous and fearless performance of the prosecutor's duty" that is so essential to a fair, impartial criminal justice system. *Nero v. Mosby*, 890 F.3d 106, 117 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976)). "Without immunity from suit, this threat of retaliatory litigation would predispose prosecutors to bring charges based not on merit but on the social or political capital of prospective defendants." *Id.* (citing *Imbler*, 424 U.S. at 438 (White, J., concurring)). Absolute immunity extends only to actions "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430–31. Whether something is "intimately associated with the judicial phase" turns on the

9

nature of the function performed. *Nero*, 890 F.3d at 117. Functions that involve acting as an advocate, such as evaluating evidence, seeking an arrest warrant, preparing and filing charging documents, and taking positions on a defendant's case in court, all are entitled to absolute immunity. *Id.* (collecting authority).

Applying those principles to the claims against Newman, it is clear that he is entitled to absolute prosecutorial immunity for the actions challenged by Davis. Like the conduct of the defendant in *Nero*, defendant's Newman's "alleged wrongs fall squarely under the umbrella of prosecutorial immunity." 890 F.3d at 118. Specifically, all of the wrongs that Davis attributes to Newman are actions taken in his role as an advocate, *e.g.*, the decision to pursue charges, requesting that Davis not be given bond, and requesting certain conditions of bond. Thus, Newman is entitled to absolute immunity and the claims against him must be dismissed.

3. *Defendant Lancaster*

As to defendant Lancaster, the court concludes that the complaint plausibly states at least a 42 U.S.C. § 1983 claim of malicious prosecution against him. Construed liberally, Davis alleges that Lancaster presented false information in a report that led directly to the charges against Davis, which were later nolle prossed. Thus, he has plausibly alleged that Lancaster "(1) caused (2) a seizure of [Davis] pursuant to legal process unsupported by probable cause." See *Evans*, 703 F.3d at 647. And, by alleging that his charges were nolle prossed*,* Davis also has plausibly alleged the third element of favorable termination. *See id.* (listing third element of malicious prosecution claim as "criminal proceedings terminated in plaintiff's favor"); *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022) (holding that "favorable termination" is satisfied so long as the prosecution ended without a conviction; no "affirmative indication of innocence" is required).

Having found that the complaint plausibly states an individual-capacity claim against Lancaster, the court will not dismiss the claim against him, but will direct the Clerk to notify him of this lawsuit. Any additional claims that may exist against Lancaster can be addressed after further briefing by the parties.[6]

### III.  CONCLUSION

For the reasons discussed above, the court will grant Davis's motion for reconsideration insofar as it requests the court to reopen his case and review his amended complaint. Upon review, however, the court concludes that he states a claim only against defendant Lancaster. The court will allow the court to proceed only as to that defendant, and the claims against all other defendants will be dismissed.

An appropriate order will be entered.

Entered: December 7, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[6] *See supra* note 2.