CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

December 10, 2024

LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| Elbryan Tremaine Davis, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:22-cv-00410 |
| ) | |
| D.C. Lancaster, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Elbryan Tremaine Davis, currently a federal inmate, filed this *pro se* action pursuant to 42 U.S.C. § 1983, asserting a variety of claims against multiple defendants. The court previously reviewed the complaint pursuant to 28 U.S.C. § 1915A(a) and dismissed all defendants other than D.C. Lancaster. (Mem. Op. (Dkt. 13) and Order (Dkt. 14).) Lancaster is the City of Danville police investigator who arrested Davis. The court construed Davis's complaint as potentially asserting primarily a § 1983 claim for malicious prosecution against Lancaster and noted that Davis may also be asserting state law claims of malicious prosecution, false imprisonment, and retaliatory prosecution.[1] (Mem. Op. at 5.) Lancaster filed a motion for summary judgment on the remaining claims. (Def.'s Mot. for Summ. J. (Dkt. 23).) For the reasons that follow, the court will grant the motion.

---

[1] The court directed Davis to clarify if he intended to assert these other claims in his briefing, (Mem. Op. at 5 n.2), but he did not do so. Lancaster addressed the claims in his briefing.

## I.     Factual and Procedural Background

The Memorandum Opinion previously entered describes Davis's allegations. (Dkt. 13.) In short, Davis contends that Lancaster fabricated the information and circumstances that led to his arrest. He denies that he possessed any drugs, that he owned the car he was driving at the time of his arrest, or that he owned the gun found in the trunk of the car. (*Id.* at 3–4.)

After Lancaster was served, he filed an answer (Dkt. 21) and subsequently a motion for summary judgment with an accompanying memorandum in support of the motion. (Def.'s Mot. for Summ. J. (Dkt. 23) and Def.'s Mem. in Support of Mot. for Summ. J. (Dkt 24).) The motion was supported by multiple declarations, phone recordings, police reports, videos, photos, a drug testing report, and a DNA analysis report. (Exs. to Dkt. 24.) The evidence supporting the summary judgment motion is substantial. The declaration of Lancaster contains a detailed description of the circumstances giving rise to the controlled buy operation that resulted in Davis's arrest. (Decl. of D.C. Lancaster (Dkt. 24-1 at 1–5).) The exhibits supporting the motion include a drug analysis report, which indicates the presence of crack cocaine in the car Davis was driving (Dkt. 24-6) and an analysis of the DNA present on the gun found in the trunk of the car Davis was driving (Dkt. 24-7), which indicated that Davis could not be ruled out as a contributor of the DNA on the gun. Davis requested an extension of time to file a response to Lancaster's motion for summary judgment (Dkt. 27), which the court granted (Dkt. 28). Plaintiff was directed to file his response by May 19, 2023.

Davis filed two additional documents prior to the extended deadline: a response to Lancaster's answer (Dkt. 30) and a request for counsel (Dkt. 31). The court denied Davis's request for counsel. (Dkt. 35.) None of these filings contain evidence or sworn statements.

None of these filings contain legal argument. They contain only conclusions and "affirmations" of what Davis previously said. Essentially, Davis says he will be ready at trial and that he expects to prevail, but he does not offer evidence to support his claims.

On June 5, 2023, after the stated deadline and after Lancaster filed a reply memorandum in support of the summary judgment motion (Dkt. 34), Davis filed a "response to Defendant's reply memorandum in support of motion for summary judgment." (Dkt. 36.) The court has fully considered this submission in light of Davis's *pro se* status even though leave was not requested nor granted for the filing of a surreply. Davis claims that the records he has sought to obtain from the Danville court that was involved in his arrest will support his position, but that he has no such evidence in his possession yet. (*Id.* at 1.) He also renews his previously denied request for counsel, but notes that he will contact the attorney who represented him before for assistance. (*Id.*) Since filing his reply, Davis has filed no updates on the status of his document requests.

## II.  Whether the Court should Defer Consideration of the Motion for Summary Judgment

As noted above, the court has reviewed the substantial evidence submitted to support Lancaster's motion for summary judgment. In response to this evidence, Davis has offered very little. He has not disagreed with any legal contention asserted by Lancaster. He has not produced a single document in support of his claims. He instead has relied on the allegations he made initially in the complaint. Accordingly, the court has considered whether the summary judgment motion should be deferred based on Davis's expressed desire for discovery and for the appointment of counsel.

**A. Davis Has Not Established a Sufficient Need for Discovery**

The court is mindful that *pro se* litigants should be given an opportunity to present evidence and to discover evidence in order to counter motions lest they be drawn "into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). "Generally, summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (cleaned up). However, "a nonmoving party cannot complain that summary judgment was granted without discovery unless that party attempted to oppose the motion on the grounds that more time was needed for discovery." *Id.* (cleaned up).

The procedurally proper course for a party desiring discovery in order to oppose a summary judgment motion is for the party to file a motion pursuant to Fed. R. Civ. P. 56(d) "stating that [he or she] could not properly oppose summary judgment without a chance to conduct discovery." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc) (cleaned up). "[A] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56[(d)] to set out reasons for the need for discovery in an affidavit." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995). While the rule formally requires that the party present an "affidavit or declaration that . . . it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), formal compliance with the rule is excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*,

302 F.3d 214, 244 (4th Cir. 2002). The court should consider whether the party supplied the "functional equivalent" of the information needed to consider a Rule 56(d) motion. *Id.* at 244–45. If the party did not file a Rule 56(d) motion, the party must otherwise "put the district court on notice as to which specific facts are yet to be discovered." *McCray*, 741 F.3d at 484.

The court has considered how the Fourth Circuit has recently evaluated cases under these standards to compare the facts in those cases to the facts here. In *Putney v. Likin*, 656 F. App'x 632, 639–40 (4th Cir. 2016), the inmate specified what evidence he sought, and the information sought was in the exclusive control of the defendants. Because of the specificity and the fact that the information sought could not be obtained from another source, the Fourth Circuit held that the district court had abused its discretion in denying discovery. *Id.* at 640. Similarly, in *Shaw*, 59 F.4th 121, the Fourth Circuit noted that "[m]uch of the evidence that Shaw needs in this matter to combat a motion for summary judgment either bears on the Prison Officials' subjective knowledge or is in their exclusive control." *Id.* at 129. The Fourth Circuit also explained that the video evidence that the plaintiff had repeatedly requested and that was in the control of defendants was "core" to his claims. *Id.*

On the other hand, in *Maine v. Becerra*, No. 23-1521, 2024 WL 3949261, at *1 (4th Cir. Aug. 27, 2024), the Fourth Circuit noted that the plaintiff, who had not filed an affidavit pursuant to Rule 56, had "only generally complained that he needed discovery" and had identified only one specific fact he wished to discover. The court concluded that "[t]his was insufficient to place the district court on notice" that discovery was essential. *Id.* And finally, in *Zahariev v. B&C Savannah Wildlife Enterprises, Inc.*, No. 23-1927, 2024 WL 3372909, at *2 (4th Cir. July 11, 2024), the Fourth Circuit observed that the plaintiff "did not state what facts were

- 5 -

in dispute, what discovery he sought, or how such discovery would support his case." It also noted that the plaintiff "did not request discovery; he merely stated he could present documentary evidence if permitted," before holding that because the plaintiff had "neither timely informed the district court that he needed discovery nor explained such need, the district court did not err in deciding the motion without discovery." *Id.*

The court finds that the circumstances in this case are more akin to *Maine* and *Zahariev* than to *Shaw* and *Putney*. Davis has not filed a Rule 56(d) motion. Davis has not made any requests for discovery from the named defendants in this action. He has not stated that any evidence he needs is in the control of defendants. Rather, the information sought is from a third party. He notes only that he has asked for case information from the Danville court. (Dkt. 27 at 1.) Davis asserts that he asked the Danville court for the records related to his 2020 arrest (the one at issue in this suit), including the "[p]olice report when I was charged with possession of a firearm and distribution of cocaine. All video [pertaining] to the case. Court transcripts, warr[a]nts for arrest, complaints, and bond presendings [sic.] from the court as well as the bondsman." (*Id.* at 2.) He also references requesting from the Danville court the same records relating to prior arrests in 2013 and 2012. (*Id.*) The court notes that most of these records would be publicly available and could be obtained by paying for copies. The court further notes that some of this information was included in the documents supporting Lancaster's motion for summary judgment. Throughout this litigation, Davis has not identified with particularity what documents or what facts would contradict the evidence submitted by Lancaster, and the court has afforded Davis ample time to do so. For these reasons, the court concludes that Davis has not met his burden to establish the need for

discovery such that consideration of the motion for summary judgment motion should be deferred.

### B. Davis has not Established Extraordinary Circumstances that Warrant the Appointment of Counsel

Next, the court has considered again whether Davis is entitled to counsel. Davis first requested counsel on May 19, 2023. (Dkt. 31.) The submission did not claim Davis was impaired in mental functioning or that he was suffering from any unusual circumstances. Instead, he claimed generally that it was difficult for him to represent himself because he is not a lawyer, because he is incarcerated, and because a lockdown had limited his access to legal materials. (*Id.* at 1.) These facts are true of most inmates, and they do not establish any exceptional circumstances justifying the appointment of counsel. *Cf. Evans v. Kuplinski*, 713 F. App'x. 167, 171 (4th Cir. 2017) (holding that the district court had abused its discretion in declining to appoint counsel when the legal issues presented in the case were complex and when the plaintiff suffered severe mental illness). The absence of extraordinary circumstances in this case led to the court previously denying Davis's request for counsel. (Dkt. 31.) Because Davis presented no additional facts in support of his renewed request for counsel in his response to Lancaster's summary judgment motion, (Dkt. 36), the renewed request must also be denied.

Accordingly, the court concludes that it is proper to consider the motion for summary judgment at this time.

### III. Lancaster's Motion for Summary Judgment

**A. Standard of Review**

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). Once the movant has made this threshold demonstration, the nonmoving party must demonstrate specific, material facts that give rise to a genuine issue to avoid a grant of summary judgment. *Celotex*, 477 U.S. at 323–24.

Under this standard, "the mere existence of a scintilla of evidence" in favor of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037. Of course, determining what is more than a "scintilla" of evidence is an amorphous task, and the Fourth Circuit recently noted that "[s]tandards are easy to recite, but harder to apply." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 n.3 (4th Cir. 2021). Therefore, the Fourth Circuit cautioned that courts should not reflexively invoke abstract legal terms to justify a result without additional analysis. *Id.* The Fourth Circuit elaborated and instructed that "[t]o overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards in considering Rule 56 motions, but

- 8 -

also actively engage with the requirements to provide 'specific, material facts' about 'genuine issues' and to avoid 'conclusory allegations and denials' in analyzing the arguments of the parties." *Id.*

In sum, a party opposing a motion for summary judgment must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the litigant completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial, and the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 322–23.

**B. Analysis**

As will be detailed below, Lancaster's motion for summary judgment was supported with sworn statements and evidence. This evidence demonstrates that Lancaster had probable cause for arresting Davis, and the existence of probable cause is fatal to the causes of action asserted by Davis. Davis has presented only conclusory and unsubstantiated allegations. Davis's assertion that he will have sufficient evidence to present later without specifying what that evidence would be is insufficient to meet his burden in responding to a summary judgment motion. Davis has offered the court no sworn statements or evidence that indicates any genuine dispute about material facts with the following exception.

1. <u>Consideration of the Allegations in Davis's Verified Complaint</u>

The complaint form used by Davis to initiate this action contained verification language, pursuant to which Davis attested to the veracity of the asserted facts and that he had personal knowledge of the facts asserted. (Compl. at 2 (Dkt. 1).) The verification was signed

under penalty of perjury. (*Id.*) Accordingly, the court has considered Davis's complaint as a verified complaint. As a general rule and as explained above, when a party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(c), (e). However, a plaintiff's "*verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (italics in original). Nonetheless, when a litigant "fails to respond to a defendant's specific evidence contradicting the conclusory allegations of [his or] her [verified] complaint or other submissions, however, that defendant may be entitled to summary judgment." *Sabbats v. Clarke*, No. 7:21-cv-00198, 2022 WL 4134771, at *5 (W.D. Va. Sept. 12, 2022) (citing *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992)).

Here, Davis relies solely on his initial allegations made in his verified complaint. These contentions are contradicted by the evidence submitted by Lancaster. Davis said "[i]t was stated that I sold 3.5 grams (8 ball) of crack cocaine to a C.I. in a control[l]ed buy (sting operation) but I did not . . . ." (Compl. at 2.) The police reports and declarations do not say that, however. (*See* Decl. of Lancaster; Case Suppl. Report (Dkt. 24-2); Reporting Officer Narrative (Dkt. 24-4); Decl. of Sergeant R.P. Wright (Dkt. 24-8).) Instead, they establish that Davis had discussed selling crack cocaine to the confidential informant, but that he was arrested incident to the controlled buy operation prior to the completion of a sale. (*See, e.g.*, Decl. of Lancaster at 4.) Contrary to Davis's assertion, he was not charged with any offense

related to a completed sale. Instead, he was charged with possession with the intent to distribute (second offense). (Reporting Officer Narrative at 4.)

Davis also claims that he "never had the first offence to begin with." (Compl. at 3.) However, the reporting officer narrative Lancaster submitted indicates that the Virginia Criminal History reporting system showed a prior conviction for the same offense. (Reporting Officer Narrative at 4.) Davis next contends "nor was any cocain[e] found on me or in the car I was in." (Compl. at 2.) But, the drug testing results submitted by Lancaster indicate there was a small amount of crack cocaine found in the car. (Decl. of Lancaster at 5; Cert. of Analysis at 1 (Dkt. 24-6).) Davis asserts that he was wrongly charged with "manufacturing/distr[i]bution" (Compl. at 2), but he was only charged with possession, specifically "possessing cocaine with the intent to distribute (second offense) in violation of Virginia Code § 18.2-248." (Mem. in Supp. of Mot. for Summ. J. at 6–7; *see* Reporting Officer Narrative at 4.)

Davis next states in his complaint: "also stated was I had a gun on me using it in a threatening manner when the register[e]d gun was in a bag, in a box, in the trunk of the car I didn't own." (Compl. at 2.) Once again, the evidence submitted by Lancaster does not show that police contended Davis had the gun on him and used it in a threatening manner. Instead, the police reports and declarations describe how the gun was found in the trunk of the car being driven by Davis in a bag in a box (consistent with Davis's claims). (Decl. of Lancaster at 5; Decl. of Wright at 2.) Davis claims in the complaint that evidence would show that his DNA was not on the gun. He contends that it "was proven that I never touched it through fingerprinting and DNA testing." (Compl. at 3.) But, the report of DNA analysis submitted

- 11 -

by Lancaster indicated that Davis could not be ruled out as a contributor of the DNA found on the gun (Cert. of Analysis at 2 (Dkt. 24-7)), and neither party submitted any information about fingerprinting.

    2. <u>Lancaster Established Probable Cause for the Arrest and is Entitled to Summary Judgment</u>

To resolve the claims asserted by Davis in this case, the court must assess only whether Lancaster had probable cause to arrest Davis. Whether the evidence was sufficient to support a conviction is not an issue presented.[2] Plaintiff cannot prevail on any claim of false arrest or malicious prosecution if there was probable cause for his arrest. *English v. Clarke*, 90 F.4th 636, 646 (4th Cir. 2024) ("To establish a § 1983 claim based on a Fourth Amendment violation for false arrest, English must show that he was seized by Clarke without probable cause."); *id.* at 647 ("To succeed on his malicious prosecution claim, English must show that Clarke '(1) caused (2) a seizure of [English] pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [English's] favor.'"); *see also Lucas v. Shively*, 31 F. Supp. 3d 800, 811 (W.D. Va. 2014) (noting that probable cause is the "dispositive question" when resolving claims of false arrest or malicious prosecution).

Probable cause is a "flexible, common-sense standard." *Florida v. Harris*, 568 U.S. 237, 240 (2013) (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). It is "determined by a 'totality-of-the circumstances' approach." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (quoting *Gates*, 462 U.S. at 230). "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). "While

---

[2] The court's prior Memorandum Opinion explains that the state law charges at issue in this case were *nolle prossed* after Davis was charged with other federal offenses arising from a different incident. (Mem. Op. at 3.)

probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." *Id.* (internal quotation marks omitted). "Probable cause is a lower standard than 'more likely than not,' *i.e.*, a preponderance of the evidence." *Lucas*, 31 F. Supp. 3d at 811. "Instead, what is required is a 'fair probability,' given all the circumstances." *Id.* at 812 (quoting *Gates*, 462 U.S. at 238). "The probable-cause inquiry turns on two factors: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Smith*, 848 F.3d at 253 (quoting *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016)). "A court should only consider the information the officers had at the time they sought the warrant." *Id.* The probable cause inquiry "examine[s] the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; we do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause." *Id.* (quoting *Graham*, 831 F.3d at 185).

Applying these standards, the court finds that the undisputed facts in the record establish the existence of probable cause for the arrest of Davis. Notably, Davis did not dispute any of the extensive information submitted by Lancaster about the Confidential Source and the recorded phone calls with Davis that generated the controlled-buy operation as described in the memorandum supporting the summary judgment motion and its incorporated exhibits. (*See* Dkt. 24 at 2–5.) Those facts are completely unrebutted, and thus the court therefore accepts them as true. Lancaster knew all of this background, so once Davis arrived at the location that had been arranged in the car he said he would be driving with suspected crack cocaine in the car, Lancaster had probable cause to arrest Davis for the drug

possession charge. Lancaster then had justification to search the car's trunk. The Supreme Court has repeatedly held that officers have probable cause to search the entirety of a car after contraband is discovered in the car. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (per curiam); *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam); *see also United States v. Nixon*, 396 F. App'x 1, 3 (4th Cir. 2010) ("Given the narcotics found on Nixon's person and in the passenger compartment of the vehicle he drove, the officers had probable cause to search the vehicle's trunk under the 'automobile exception' to the warrant requirement.").

Once the gun was found in the trunk of the car that Davis was driving as its sole occupant (Decl. of Lancaster at 4–5), probable cause existed to arrest Davis for the gun charges: possessing a firearm by a convicted felon in violation of Virginia Code § 18.2-308.2 and possessing a firearm while possessing a dangerous narcotic in violation of Virginia Code § 18.2-308.4. Probable cause existed at the time of the arrest even if it was subsequently determined Davis did not own the car or gun.

The magistrate judge that reviewed the evidence supporting the arrest at Davis's bond hearing also concluded that probable cause to arrest had been established (*See* Decl. of Lancaster at 6), buttressing this court's conclusions. *See Smith*, 848 F.3d at 255 (courts "generally accord great deference to a magistrate's determination of probable cause," although that deference is not "boundless"); *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) (noting that magistrate approval provides additional support for finding an officer's actions objectively reasonable).

The finding that probable cause existed to arrest Davis defeats the causes of action he asserted as a malicious prosecution claim requires a showing that probable cause did not exist.

- 14 -

*Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). So, this claim fails as a matter of law because probable cause was established. Likewise, any claim of retaliatory arrest and/or prosecution fails because probable cause was established. *Nieves v. Bartlett*, 587 U.S. 391, 400–01 (2019). Further, any pendent state law claims (such as malicious prosecution and false imprisonment) also fail in light of established probable cause for the arrest. *Shrewsbury v. Williams*, 844 F. App'x 647, 650 (4th Cir. 2021) (quoting *Stanley v. Webber*, 531 S.E.2d 311, 314 (Va. 2000) (lack of probable cause is an element of malicious prosecution claim, which also requires malice)); *Strozier v. Town of Blacksburg*, No. 7:21-cv-00072, 2021 WL 5236871, at *2 (W.D. Va. Nov. 10, 2021) (noting probable cause defeats a Virginia false imprisonment claim). Because the established facts show probable cause existed for Davis's arrest, Lancaster is entitled to summary judgment.

    3.  <u>Davis Failed to Establish a Viable Section 1983 Claim Relating to his Interrogation</u>

Davis claims he was interrogated by Lancaster for seven hours "without water or bathroom break." (Compl. at 3, 4.) He does not assert that he was coerced or tricked into any confession. Davis does not link the assertion about his interrogation to any claimed constitutional violation; such a claim would arise, if at all, under the due process clause of the Fourteenth Amendment.[3]

The Fourth Circuit has held that coercive interrogations can violate the due process clause, but only if the methods employed were "so brutal and so offensive to human dignity that they shock the conscience." *English*, 90 F.4th at 649 (quoting *Chavez v. Martinez*, 538 U.S.

---

[3] The Fourth Circuit has ruled that such a claim does not arise under the First Amendment in any event or under the Fifth Amendment when the interrogation is not subsequently used in a criminal proceeding. *English*, 90 F.4th at 648.

760, 773 (2003)). The Fourth Circuit has granted summary judgment as to claims alleging much more aggressive conduct during an interrogation (such as shackling, denying a request for a parent and counsel, and kicking the arrestee's chair out from under him), finding the allegations did not support "the materially higher standard of a due process violation." *Id.* (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (limiting due process violations to "only the most egregious official conduct")).

Additionally, the court reviewed the time-stamped videotapes submitted as exhibits to the summary judgment motion (Dkt. 26), which are body camera footage of two officers involved in Davis's arrest. (Officer Branch's Body Camera Footage (Dkt. 26 at 1-G); Officer Brandon's Body Camera Footage at Green Street Precinct (Dkt. 26 at 1-I); and Officer Brandon's Body Camera Footage at Danville Jail (Dkt. 26 at 1-J).) The videotapes show Davis's arrest, Lancaster's questioning of Davis, and Davis's processing into the Danville jail. (*Id.*) Throughout the footage, the officers were professional, polite, and in no way "brutal" or "offensive." *See English*, 90 F.4th at 649. Davis was taken out of his car and handcuffed at approximately 6:09 p.m. (Branch's Body Camera Footage.) Davis is offered food (cake) by Lancaster, but Davis declines at approximately 7:07 p.m. (Brandon's Body Camera Footage at Precinct.) Lancaster questions Davis for under half an hour initially (*id.* from approximately 6:51 p.m. to 7:15 p.m.) and then for several more minutes about access to Davis's phone as Davis is being moved into the jail. (Brandon's Body Camera Footage at Jail from approximately 8:41 p.m. to 8:52 p.m.) The video also captures a bathroom break taken by Davis at approximately 9:02 p.m. (*Id.*) Davis is taken into custody of the jail by 9:24 p.m. (*Id.*) The entire encounter from Davis's arrest to his intake at the jail took just over three hours.

Davis was offered food and permitted to use the restroom. It appears that no conduct captured on the videotapes is "brutal" or "offensive." Accordingly, Davis's unsupported and thoroughly contradicted statement that his interrogation lasted seven hours without water or a bathroom break does not establish any viable Section 1983 claim, and Lancaster is entitled to summary judgment on any such claim.

## V.   Conclusion

For the reasons stated above, the court **GRANTS** Lancaster's motion for summary judgment (Dkt. 23). This Memorandum Opinion resolves all claims asserted by Davis, and so this action will be dismissed. An appropriate Order will follow. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and accompanying Order to Davis.

**ENTERED** this 10th day of December 2024.

/s/ *Jasmine H. Yoon*
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE